UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DONNIE PRITCHETT,         )
                          )
     Plaintiff          )
                          )
    vs.              )     Case No. 4:18-cv-01157-HNJ
                          )
NANCY A. BERRYHILL,     )
Acting Commissioner of     )
Social Security,            )
                          )
     Defendant.       )

## MEMORANDUM OPINION AND DISMISSAL ORDER

Plaintiff Donnie Pritchett seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), regarding his claim for Disability Insurance Benefits. The undersigned carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for disability benefits and establish entitlement for a period of disability, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. The burden rests upon the claimant on the first four steps of this five-step process; the Commissioner sustains the burden at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00–114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairments would prevent any person from performing substantial gainful activity.

20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii). That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience.") (citing 20 C.F.R. § 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant is successful at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work. 20 C.F.R. §§ 404.1512(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* §§ 404.1520(a)(4)(v),

416.920(a)(4)(v); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Although the court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel*, 631 F.3d at 1178 (citations and internal quotation marks omitted). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (citations omitted). Nonetheless, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

# FACTUAL AND PROCEDURAL HISTORY

Applying the five-step sequential process, the ALJ found at step one that Pritchett met the insured status requirements of the Social Security Act through December 31, 2018. (Tr. 18). The ALJ further found Pritchett had not engaged in substantial gainful activity since March 12, 2013, the alleged onset date, through his date last insured of December 31, 2018. (*Id.*) At step two, the ALJ found that Pritchett suffers the following severe impairments: congestive obstructive pulmonary disorder (COPD); polycythemia vera; hypertension; non-insulin-dependent diabetes; degenerative arthritis in the lumbar spine; unspecified depressive disorder; and mild intellectual disability. (*Id.*) At step three, the ALJ concluded that Pritchett's impairment or combination of impairments did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

At step four, the ALJ determined Pritchett exhibited no past relevant work through the date last insured. (Tr. 25). The ALJ proceeded to step five, finding that, through the date last insured, Pritchett exhibited the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with certain limitations.[1] (Tr. 22). The ALJ relied on the VE's testimony to conclude Pritchett could perform such jobs as a sorter, an assembler, or a cashier. (Tr. 26).

---

[1] The ALJ described the following limitations:

On May 21, 2018, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1). On July 25, 2018, Pritchett filed his complaint with the court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Mr. Pritchett contends substantial evidence does not support the ALJ's decision. Specifically, he faults the ALJ for: (1) providing inadequate reasoning for discounting Pritchett's subjective complaints regarding the severity of his pain symptoms; and (2) failing to accord substantial weight to the treating physician's opinion. After consideration of the record and the ALJ's decision, the court finds substantial evidence supports the ALJ's determination.

### A. The ALJ Properly Evaluated Pritchett's Subjective Complaints and Properly Applied the Pain Standard

"To establish disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing: '(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming

---

[The claimant] should never sit, stand, or walk greater than 30 minutes continuously at one time; he can occasionally reach with the upper extremities; he can occasionally use foot or leg controls; he can occasionally climb, stoop, kneel, crouch and crawl; he can have occasional exposure to extreme cold or extreme heat, wetness, humidity and vibrations; he can perform simple, routine job tasks that do not require him to be responsible for the sake [of] and welfare of others; and he can work in settings in which changes in the setting are infrequent and gradually introduced. (Tr. 22).

the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.'" *Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 F. App'x 650, 656 (11th Cir. 2015)(quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)(*per curiam*)). A claimant's testimony coupled with evidence that meets this standard "is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)(citation omitted).

Social Security Ruling ("SSR") 16-3p, effective March 28, 2016, eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2016 WL 1119029, *7 (Mar. 16, 2016). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.939(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's

symptoms." 2016 WL 1119020 at *9; *see also Wilson*, 284 F.3d at 1225 (if an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

In his opinion, the ALJ summarized Pritchett's hearing testimony regarding his symptoms. (Tr. 23-24). The ALJ found that Pritchett's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not consistent with the medical evidence." (Tr. 24.). Pritchett argues that the ALJ failed to properly evaluate his subjective complaints of pain. The ALJ detailed Pritchett's medical evidence to support his decision, concluding that it supported his RFC assessment. (Tr. 23-24.)

At his first ALJ hearing on February 23, 2016, Pritchett testified that his back and his heart keep him from working. (Tr. 673). Pritchett explained that if he sits or stands for too long, his back bothers him, and he can only stand for approximately forty-five (45) minutes before he has to rest. (Tr. 678). Pritchett emphasized his troubles with breathing, stating that he cannot lift anything heavier than a book. (Tr. 679). Regarding his daily activities, Pritchett testified that he goes grocery shopping with his wife and does things outside of the home "every now and then," but he does not do much work outside or inside of the house. (Tr. 680, 685). Pritchett stated that he mainly sleeps and watches television during the day. (Tr. 686).

However, Pritchett's medical records indicate physical findings that do not fully support his statements about the intensity, frequency, and severity of his pain. In

April 2012, Pritchett visited DeKalb Regional Medical Center's ("DeKalb") emergency department with complaints of precordial chest pain and numbness in his left arm. (Tr. 398). Medication helped with the chest pain, and Pritchett exhibited normal findings during his physical examination. (Tr. 399). Medical personnel ascribed Pritchett's chest pain to likely coronary artery disease, and recommended Pritchett undergo a nuclear stress test. (*Id.*) The EKG of his chest demonstrated no abnormal consolidation or acute chest disease. (Tr. 407).

A week later, Pritchett underwent a nuclear stress test with Dr. Ronald Hanson. (Tr. 394). The test produced "profoundly abnormal" findings, with the left ventricle showing an ejection fraction of 45 to 50 percent. (Tr. 396). Dr. Hanson diagnosed Pritchett with diffuse coronary artery disease, but deemed it non-critical at the time and prescribed aggressive medical management. (Tr. 396). The following day, Pritchett visited the emergency department at DeKalb with intense pain on the right side of the groin — the location where personnel entered the catheter for his stress test the previous day. (Tr. 391). During his physical examination, Pritchett remained alert and was able to move all four extremities equally, denied any numbness or tingling, rated his pain a 5/10, denied any edema, and displayed equally strong peripheral pulses bilaterally. (Tr. 389). He exhibited a normal heart rate, and medical personnel identified a small hematoma at the catheter site with severe tenderness on pressure. (Tr. 392). Medical personnel discharged him that evening with prescribed medication. (Tr. 392).

A few days later, Pritchett returned to DeKalb's emergency department with complaints of sudden chest pain and palpitations. (Tr. 383). During his physical examination, medical personnel noted that he was in mild distress, displayed a supple neck and moderate reproducible chest wall tenderness, and exhibited unlabored respiratory sounds and a normal heart rate and rhythm, with no swelling or deformities in his extremities. (*Id.*) His EKG displayed normal sinus rhythm and rate and no evidence of acute ischemia or injury. (*Id.*) Medical personnel discharged Pritchett two hours later with medication for acute pneumonia. (Tr. 386).

In July 2012, Pritchett visited Gadsden Regional Medical Center's ("Gadsden") emergency department with complaints of chest pain in the left breast region that radiated down his arm. (Tr. 322). His EKG displayed normal sinus rhythm and no acute changes, and during his physical exam he remained aware and in no acute distress, displayed a supple neck with adenopathy, exhibited fair air entry bilaterally in his lungs and no heart murmurs, portrayed no edema or cyanosis, and performed full range of motion of his peripheral joints. (Tr. 328). Medical personnel ruled out an acute myocardial infarction, and his chest x-ray reflected his cardiothoracic ratio within normal limits. (Tr. 328, 330). He exhibited similar results during his physical exam the following day upon discharge. (Tr. 331).

In April 2013, Pritchett visited DeKalb's emergency department with complaints of chest pain, hypertension, and shortness of breath. (Tr. 344). During his physical examination, medical personnel noted that Pritchett was in physical distress

and anxious, and he had a bruit on the right side of his neck. Pritchett exhibited a normal heart rate and rhythm, but displayed an absent posterior tibalis and doralis pedis pulses on his left side. (Tr.346). Films portrayed concentric left ventricular hypertrophy, and medical personnel encouraged him to continue his medication. (Tr. 347).

Pritchett returned to DeKalb's emergency department in June 2013 with complaints of chest pain that he rated as a 10/10. (Tr. 336). He denied any shortness of breath and admitted that rest relieved his pain. (*Id.*) During his physical examination, medical personnel noted that he was not in acute distress and that he exhibited positive chest wall tenderness. (*Id.*) Pritchett displayed no evidence of acute or chronic vascular compromise in the lower extremities, as well as no evidence of an ischemic event. (Tr. 336-37). Medical personnel encouraged Pritchett to continue his medication and encouraged aggressive statin therapy and smoking cessation. (Tr. 337). Pritchett returned to DeKalb's emergency department the following month with identical symptoms, and he exhibited the same physical examination findings, with the exception of a subclavian bruit on his right side. (Tr. 343).

In January 2014, Pritchett visited Dr. Wael Al-Halaseh at DeKalb Cardiology with complaints of chest pain and shortness of breath. Pritchett reported that his medication was helping his non-obstructive coronary artery disease, hypertension, and diabetes. (*Id.*) During his physical examination, Dr. Al-Halaseh noted that Pritchett was alert and displayed a normal affect, had a supple neck and unlabored respiratory

effort, no thoracic deformity or chest wall tenderness, displayed a regular heart rate and rhythm with no gallops, rubs, or clicks, denied any cyanosis or edema, and demonstrated full and equal pulses in all extremities. (Tr. 339-40). Dr. Al-Halaseh diagnosed Pritchett with non-obstructive coronary artery disease with subcostal tenderness. (Tr. 340).

Pritchett began seeing Dr. Joleen Gorman in January 2014. (Tr. 514). During his initial visit, he complained of chest pains in the left side of his chest and shortness of breath when sitting, lying down, and walking. (*Id.*) Upon physical examination, Pritchett displayed clear eyes and ears; a supple neck; few scattered wheezes and rhonchi; regular heart rate and rhythm; soft and nontender abdomen; normal curvature in the back with no tenderness; and full range of motion in all extremities. (*Id.*) Dr. Gorman diagnosed Pritchett with coronary artery disease, hypertension, likely COPD, carotid artery occlusion, anxiety, and insomnia. (*Id.*)

In Mach 2014, Pritchett visited DeKalb's emergency department with complaints of chest pain, abdominal pain, nausea, shortness of breath, and vomiting. (Tr. 445). During his initial physical exam, Pritchett portrayed no acute or respiratory distress and displayed a regular heart rate and rhythm and "grossly normal" extremities. (*Id.*) Pritchett's chest x-rays exhibited a normal heart and mediastinum, as well as fully expanded and clear lungs; the x-rays identified no significant abnormalities in the chest. (Tr. 453). Pritchett's CT of his abdomen and pelvis exhibited clear lungs and no significant abnormalities in the liver, spleen, pancreas, or

gallbladder, but it did identify evident hepatic steatosis.[2] Medical personnel transferred Pritchett to Erlanger Health System due to increased white blood cell count and mildly elevated liver function tests. (Tr. 473).

During his visit at Erlanger, medical personnel identified signs of colitis, hyperlipidemia, and coronary artery disease, but no evidence of ischemia. (Tr. 471). Pritchett received a surgery consultation due to his elevated white blood count, and his physical examination displayed a regular heart rate and rhythm, lungs clear to auscultation bilaterally, a mildly tender abdomen upon palpation in the epigastrium, and no edema. (Tr. 473-74). Pritchett's CT scan of his abdomen and pelvis revealed a fluid-filled colon that could indicate inflammatory or infectious bowel disease, but no evidence of acute abdominal or pelvis disorders. (Tr. 493). Pritchett's CT scan of his chest exhibited normal cardiomediastinal contours and clear lungs and pleural spaces. (Tr. 494). Medical personnel discharged Pritchett the following day with medication and recommended follow-up appointments. (Tr. 500).

In April and May 2014, Pritchett visited Dr. Gorman with complaints of dizziness, chest pains, and weakness in his right arm and leg. (Tr. 511-12). His physical examinations displayed similar findings: lungs clear to auscultation bilaterally; regular heart rate and rhythm; minimal paraspinal muscle tenderness; and femoral pulses. (*Id.*)

---

[2] Hepatic steatosis, known as "fatty liver", refers to "the collection of excessive amounts of triglycerides and other fats inside liver cells."
https://medical-dictionary.thefreedictionary.com/Hepatic+steatosis (last visited Aug. 27, 2019).

Dr. Gorman assessed Pritchett with polycythemia, and deemed him "unable to work" due to multiple health issues. (*Id.*) Pritchett underwent an abdominal ultrasound at Fort Pane Imaging a few days later, exhibiting a well visualized and unremarkable pancreas with normal findings. (Tr. 506).

Pritchett returned to Dr. Gorman in June 2014 with complaints of back and chest pain and tingling hands. (Tr. 509). Upon physical examination, Pritchett exhibited a supple neck with no adenopathy; mild tenderness in the costochondral junctions; lungs that are clear to auscultation bilaterally; regular heart rate and rhythm; soft and nontender abdomen; bilateral equal grip; no wrist tenderness; back tenderness starting in the middle thoracic spine that radiates into the midline lumbar area; and tenderness in the bilateral paraspinal muscles without acute spasms. (*Id.*) Dr. Gorman assessed Pritchett with chest pains that could be cardiac or chondrial and back pain, and recommended medications and labs four to six weeks thereafter. (*Id.*)

In July 2014, Pritchett visited Dr. Darryl Prime at Southern Cardiovascular Associates upon referral from Dr. Gorman. (Tr. 525). Pritchett complained of chest pain, a history of left arm numbness and coronary artery disease, a possible blood disorder, and headaches that affected his ability to think. (*Id.*) During his physical examination, Dr. Prime noted that Pritchett appeared well-developed and in no acute distress; his respirations were non-labored, and his lungs were clear to auscultation bilaterally. (Tr. 526). Pritchett underwent a cardiovascular examination by Dr. Prime, and Dr. Prime noted the following: no lifts, heaves, or thrills; regular rhythm and rate

with no murmurs, rubs, or gallops; soft-nontender abdomen; pedal pulses at 2+ bilaterally throughout; and full range of motion of all extremities. (Tr. 525). Dr. Prime assessed that Pritchett likely had significant polycythemia. (*Id.*) A few days later, Pritchett underwent carotid Dopplers[3] with Dr. Prime, and the results indicated no significant obstructive lesions in the extracranial carotid system, and an antegrade flow in the vertebral arteries. (Tr. 524).

At the end of July 2014, Pritchett underwent a disability physical examination by Dr. Younus Ismail. (Doc. 530). Pritchett complained of shortness of breath, chest tightness, back pain, headaches, coughing, and congestion. (*Id.*) Pritchett completed a thorough physical examination, and Dr. Ismail noted the following: not in any acute distress; normal cervical spine with no deformity of the cervical spine or spasm of cervical paraspinal muscles; no thyromegaly or jugulovenous distention; lungs with good bilateral air entry; audible in all four areas of the heart, with no murmurs or gallops; soft and non-tender abdomen; no deformities noticed in the extremities; no cyanosis, clubbing, edema, or stasis; handgrip at 5/5; Romberg's negative; intact fine and gross manipulation; no evidence of any muscular atrophy; and normal range of motion in the extremities. (Tr. 531). Dr. Ismail identified no evidence of kyphosis or scoliosis, and observed a normal gait in Pritchett's stride. (Tr. 530). Dr. Ismail's

---

[3] Carotid Dopplers "visualize and assess blood flow through the carotid arteries toward evaluating risk for stroke related to atherosclerosis." https://medical-dictionary.thefreedictionary.com/Carotid+Doppler (last visited Aug. 27. 2019).

conclusion stated the following: "The patient is a 41-year-old male with a history of some coronary artery disease and hypertension, has most of the complaints subjective, not much physical findings noticed on the examination. Proper medical evaluation, subsequent treatment, occupational and physical rehab along with a complete psychiatric evaluation will be beneficial for the patient." (Tr. 532).

An August 2014 imaging of Pritchett's lumbar spine revealed minimal lower facet and sacroiliac joint changes with minimal occasional osteophytic spurring. (Tr. 534). Pritchett returned to Dr. Prime in October 2014 with complaints of chest pain and shortness of breath that occurred with minimal activity. (Tr. 543). During his physical examination, Pritchett was not in acute distress and he displayed a supple neck, clear lungs with no wheezing, a regular heart rate and rhythm with no murmur, a soft and non-tender abdomen, and no clubbing, cyanosis, or edema. (*Id.*) An EKG exhibited sinus rhythm with right axis deviation, and Dr. Prime ordered a stress test and advised discontinuation of tobacco products. (Tr. 542). During his stress test a few days later, Pritchett exhibited no evidence of ischemia, and imaging of his heart displayed normal wall motion and thickening with left ventricular ejection fraction at 55%. (Tr. 545). A November 2014 chest x-ray was unremarkable, and medical personnel advised Pritchett to discontinue using tobacco products and continue medication for his coronary artery disease. (Tr. 540).

Pritchett returned to Dr. Gorman in December 2014 with complaints of back and right leg pain, and nasal and chest congestion. (Tr. 569). During his physical

examination, Pritchett exhibited tenderness in his back, beginning at the middle thoracic spine and radiating into the midline lumbar area, as well as tight hamstring muscles and tenderness in his bilateral paraspinal muscles. (*Id.*) Dr. Gorman recommended continuation of his medication regimen and an increase in fluids and rest. (Tr. 570).

Pritchett visited Dr. Gorman twice in January 2015, complaining of back and leg pain after falling down steps two weeks prior. (Tr. 565, 567). Pritchett maintained full range of motion of his extremities without pain, lungs clear to auscultation bilaterally, and regular heart rate and rhythm. (*Id.*) Dr. Gorman also noted back tenderness in his midline from about the middle thoracic spine to coccyx, as well as moderate bilateral paraspinal muscle tenderness and tension. (*Id.*) Dr. Gorman diagnosed Pritchett with a contusion in his right ribcage and recommended heat, stretching, and medication. (*Id.*)

Between July and November 2015, Pritchett visited Dr. Gorman three times with complaints of back, neck, and leg pain. (Tr. 555, 558, 561). During each visit, Pritchett exhibited the same findings during his physical examinations: supple neck, lungs clear to auscultation bilaterally, regular heart rate and rhythm, soft and nontender abdomen, moderate tenderness in the midline of his back from the middle thoracic spine to coccyx, moderate bilateral paraspinal muscle tenderness and tension, and low back pain upon completion of the straight leg raise. (*Id.*) Pritchett struggled

with controlling his blood sugar, and Dr. Gorman recommended medications and a referral to a back specialist. (Tr. 556, 559, 562).

In January 2016, Pritchett returned to Dr. Prime with complaints of chest pain and shortness of breath. (Tr. 536). Pritchett underwent a physical examination, and Dr. Prime reported normal findings. (Tr. 538). A few days later, Pritchett's SPECT[4] scan revealed normal findings with no perfusion defect, normal left ventricular size and wall motion with ejection fraction at 51%, no evidence for recurrent myocardial ischemia based on the normal ECG response and SPECT scan, and normal left ventricular function. (Tr. 548).

In April 2016, Dr. Sathyan Iyer performed a medical examination for Pritchett. Pritchett complained of non-exertional chest pain, shortness of breath, and back pain, stating that activities such as bending, sitting, and standing bother him. (Tr. 593). Dr. Iyer indicated that an MRI scan revealed a bulging disc. (*Id.*) Dr. Iyer noted during Pritchett's physical examination that he seemed to be in mild-to-moderate distress because of back pain; he cannot walk on his right heel or tiptoe, and can only partially squat; he exhibited no adenopathy, thyromegaly, or carotid bruit in his neck; regular heart rate and rhythm; no pedal edema; good pedal pulses; lungs clear to auscultation bilaterally; and no significant abnormality extremities. (Tr. 594). Pritchett maintained

---

[4] A SPECT scan, or "single photon emission computed tomography", is defined as "tomographic imaging of metabolic and physiologic functions in tissues, the image being formed by computer synthesis of photons of a single energy emitted by radionuclides administered in suitable form to the patient." htttps://medical-dictionary.thefreedictionary.com/SPECT+scan (last visited Aug. 27, 2019).

full range of motion in his neck, elbows, wrists, hips, knees, and ankles; exhibited normal grip strength, opposition functions, and muscle power of the upper extremities; and maintained nearly complete range of motion in his shoulders. (Tr. 595). In his lumbar spine, Pritchett demonstrated tenderness over the muscles of the entire back. (*Id.*) Dr. Iyer opined that Pritchett had a history of lower back pain with limited range of motion, suggestive of degenerative joint disease of the lumbar spine and tendinopathy of the shoulders. (Tr. 596). He concluded that Pritchett "[in his current condition] could have impairment of functions because of the back problem with activities such as bending, lifting, pushing, pulling, and overhead activities. He may not function well at extremes of temperature and dusty conditions. He does not have any other physical limitation." (*Id.*)

Pritchett returned to Dr. Gorman in May 2016 with complaints of chest, back, and leg pain, stating that his medication allowed him to complete small activities of daily living. (Tr. 628). Pritchett displayed the following findings during his physical examination: supple neck with no adenopathy or thyromegaly; lungs clear to auscultation bilaterally; regular heart rate and rhythm; moderate tenderness in the midline of his back from the middle thoracic spine to coccyx; moderate bilateral paraspinal muscle tenderness and tension; and straight leg raise at 60 degrees on the right side and 70 degrees on the left side with low back pain. (Tr. 628-29). Dr. Gorman assessed Pritchett with lumbar degenerative disc disease, hypertension, chest pain, and diabetes mellitus. (Tr. 629). Dr. Gorman encouraged Pritchett to continue

medication. (*Id.*) During follow-up appointments in October 2016 and January 2017, Pritchett exhibited the same results during his physical examination. (Tr. 58, 626).

In January 2017, Pritchett visited Dr. Prime with complaints of chest pain on the left side and tingling in his legs. (Tr. 635). During his physical examination, Pritchett was well-developed and displayed no thoracic asymmetry or deformity noted in the chest; normal respiration rhythm and depth; and normal cardiovascular findings. (Tr. 637). Pritchett underwent a left heart catheter with coronary artery angiography a few days later, and the results estimated his left ventricle at 50% effusion, with normal wall motion and systolic function. (Tr. 654). Pritchett visited Dr. Gorman in April 2017 for a follow-up appointment, complaining of tingling legs and back pain. (Tr. 54). Pritchett said the medication allowed him to complete small tasks around the house. (*Id.*) Pritchett displayed the same results during his physical examination as he had over the previous four appointments with Dr. Gorman (Tr. 54).

During Pritchett's second ALJ hearing in June 2017, Dr. James Anderson testified about Pritchett's various impairments that appeared from the record. (Tr. 36). Dr. Anderson reviewed the entire medical evidence of record, and concluded the following:

> [Pritchett] is a 44 year old gentleman with multiple physical complaints. He has non-cardiac chest pain due to a combination of smoker's bronchitis and chronic obstructive pulmonary emphysema. He has Polycythemia Vera probably secondary to chronic cigarette abuse which

is asymptomatic. He has hypertension which is asymptomatic. And apparently he has non-insulin dependent diabetes mellitus.

He has treating record which shows he has a slow normal pulmonary function studies as [part] of the evaluation for his chest pains. He has a cardiac catheterization done in January of this year to rule out coronary artery disease and it was normal. He has x-rays of his spine in 11-F where it shows minimal degenerative arthritis of the lumbosacral spine. He might have been treated symptomatically – several years. The records that we have do not meet of equal the secretary's listing for disability. I believe that he would be able to do a full range of light and sedentary work activity.

(Tr. 36-37).

As the foregoing medical records review and testimony portray, the clinical and non-medical evidence serves as substantial evidence that the ALJ did not err in his determination regarding the pain caused by Pritchett's impairments. During the relevant period, Pritchett routinely maintained full range of motion of his extremities without pain, lungs clear to auscultation bilaterally, regular heart rate and rhythm, and other normal cardiovascular and musculoskeletal findings. As recently as April 2017, Pritchett reported that the medication improved his pain to a point where he could regularly complete activities of daily living. Therefore, the objective medical evidence substantially supports the ALJ's determination as to Pritchett's pain symptoms.

The ALJ offered adequate explanations for discounting Pritchett's testimony as to his pain and weakness prior; objective medical evidence demonstrated Pritchett's pain required certain exertional and non-exertional limitations, but it did not constitute a disability. As reviewed herein, substantial evidence in the record supports

the ALJ's findings; and thus, the ALJ did not err in assessing Pritchett's subjective complaints or applying the pain standard.

## B. The ALJ Assigned Proper Weight to the Treating Physician's Opinion

The ALJ must give "substantial or considerable weight" to the opinion of a treating physician "unless 'good cause' is shown." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(citing *Lewis v. Callahan*, 125 F.3d 1436 1440 (11th Cir. 1997)). Good cause exists when: (1) the evidence did not bolster the treating physician's opinion; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* An ALJ must clearly articulate the reasons for affording less weight to a treating physician's opinions. *Id.* An ALJ does not commit reversible error when (1) he articulates specific reasons for declining to give the treating physician's opinion controlling weight, and (2) substantial evidence supports these findings. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005)(*per curiam*).

Pritchett contends the ALJ erred in giving limited weight to the opinion of his treating physician, Dr. Gorman. In February 2016, Dr. Gorman opined the following:

> I have seen Mr. Donnie Pritchett as a patient for over 2 years. In that time, his back condition has worsened. He recently had an evaluation with a spine specialist who told him nothing surgical could be done for him. He also has a blood disorder and cardiac ischemia which would further preclude any surgical intervention. Therefore, he will need to be treated medically with pain medications, muscle relaxers, and exercise as tolerated. He also is being treated for diabetes and anxiety. His prognosis for employability is grim as he is not able to stand for longer than 20 minutes or so, can't bend, stoop or twist, and can't lift over 10-15

> pounds. He also continues to suffer from intermittent chest pains and
> has a low exercise tolerance due to blood disorder and cardiac ischemia.
> I do not feel he would be able to work with these health problems.

(Tr. 551). The ALJ found Dr. Gorman's opinion inconsistent with and unsupported

by the most recent medical evidence of record.

The court finds the ALJ possessed good cause to give limited weight to Dr.

Gorman's opinion. Evidence in the record fails to support Dr. Gorman's opinion,

including her own notes. Although Pritchett regularly visited Dr. Gorman with

complaints of back, chest, and leg pain, he consistently exhibited lungs clear to

auscultation bilaterally; regular heart rate and rhythm; minimal to moderate paraspinal

muscle tenderness; and femoral pulses. (Tr. 54, 509, 511-12, 524, 555, 558, 561, 628).

Pritchett exhibited no acute distress and maintained a full range of motion in his

extremities. (*Id.*) During his most recent appointments with Dr. Gorman, Pritchett

reported the medication allowed him to do things around the home. (Tr. 54, 628).

Furthermore, the objective medical evidence showed no signs of ischemia. (Tr. 383,

471, 545, 548).

In addition to the medical records' contrast with Dr. Gorman's assessment, her

opinion that Pritchett is unable to work due to his health problems invades the

province of the ALJ and sustains no dispositive weight.

> According to 20 C.F.R. § 404.1527(d), the determination of whether an
> individual is disabled is reserved to the Commissioner, and no special
> significance will be given to an opinion on issues reserved to the
> Commissioner. Section (d)(2) provides that although the Commissioner
> will consider opinions from medical sources on issues such as the RFC

and the application of vocational factors, the final responsibility for deciding those issues is reserved to the Commissioner.

*Pate v. Comm'r, Soc. Sec. Admin.*, 678 Fed. Appx. 833, 834 (11th Cir. 2017). That is, "the task of determining a claimant's . . . ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 Fed. Appx. 993, 999 (11th Cir. 2010).

Based on this review, the ALJ properly articulated that Pritchett's medical records did not support Dr. Gorman's opinion, and thus substantial evidence buttresses the ALJ's accordance of limited weight to the physician's opinion regarding Pritchett's alleged disability.

### Conclusion

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision.

**DONE** this 28th day of August, 2019.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE